**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 25-11835

Non-Argument Calendar

————————————

FOREST ASHLIN LEE,

*Plaintiff-Appellant*

*versus*

TIFFANY ELIZABETH CURCIO,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:25-cv-14096-DMM

————————————

Before JILL PRYOR, BRANCH, and KIDD, Circuit Judges.

PER CURIAM:

Forest Lee, a U.S. citizen living in Brazil, seeks the return of his minor child to Brazil under the International Child Abduction Remedies Act ("ICARA"). At the time of Lee's petition, the child

was in the United States with his mother, Tiffany Curcio. The district court denied Lee's petition. We now affirm that denial.

## I. BACKGROUND

Lee and Curcio are U.S. citizens and parents of L.R.L., a minor child born in the United States. Lee and Curcio never married and have not been romantically involved since 2022.

In September 2024, Lee and Curcio formed a plan to move to São Paulo, Brazil, with L.R.L. In preparation for the move, they obtained passports for themselves and L.R.L., and traveled to Brazil to view apartments and tour potential schools for L.R.L.

Lee, Curcio, and L.R.L. arrived in Brazil on January 11, 2025. They entered on 90-day tourist visas, which could be extended an additional 90 days, for a total of 180 days. Curcio signed a 30-month lease for an apartment, and Lee signed a separate 30-month lease for a different apartment. The parents enrolled L.R.L. in school and initiated the process to secure a student visa. Curcio also signed up L.R.L. for extracurricular skateboard lessons.

Curcio and L.R.L. did not remain in Brazil for long. In early March 2025, Curcio contacted the U.S. consulate in São Paulo to inquire about her rights regarding L.R.L., as she intended to return to the United States. Curcio was informed that her tourist visa would expire on April 11, 2025, after which time she could be deported without L.R.L. "Given the exigent nature of [Curcio's] impending visa expiration," the consulate issued L.R.L. an emergency passport on March 12, and Curcio and L.R.L. returned to the United States.

On March 27, 2025, Lee filed a petition under ICARA, claiming that L.R.L.'s removal from Brazil was wrongful and seeking L.R.L.'s return to São Paulo, his place of "habitual residence." That same day, the district court scheduled an evidentiary hearing directing Curcio to show cause why L.R.L. should not be remanded to Lee's custody and returned to Brazil. At the hearing, Lee appeared with counsel and Curcio appeared pro se. The parents elected to proceed with the merits of the case at the hearing and have the court reach a decision that day.

At the hearing, Curcio testified that she sought to remain in Brazil for only one year. Lee testified that he in fact told Curcio they would stay in Brazil "for only a year." Curcio's move was subject to securing employment and necessary prescription medication, and she ultimately struggled to obtain both. Although Curcio signed a lease for an apartment in Brazil, the paperwork was in a foreign language, and she stated she was unaware that it was a three-year lease. Lee did not dispute that the lease was in a foreign language but testified that it was translated and reviewed by Curcio. Curcio also testified that she expressed to Lee her safety concerns about living in São Paulo. When Curcio asked Lee about returning to the United States with L.R.L., she was "brushed off several times."

The district court entered an oral ruling at the end of the hearing. The court determined that L.R.L.'s habitual residence was not in Brazil and that his removal was not wrongful. After the hearing, the district court issued a seven-page written order denying the

petition and entered a separate final judgment. In its oral and written rulings, the district court found as important facts that the parties are U.S. citizens and were in Brazil for only approximately sixty days, and that most of L.R.L.'s extended family lived in the United States, where L.R.L. spent most of his life. The district court further found that the circumstances of the move "cast further doubt as to the habituality of their planned stay," as they entered on 90-day tourist visas. Referencing a Brazilian foreign affairs website not cited by either party, the district court noted that the Brazilian government made clear that tourist visas were not for those intending to establish residency in Brazil.

The district court further observed that Curcio appeared to have "considerable reservations" about establishing long-term residency in Brazil, suggesting that her intention to move was, "at the very least, conditional." In a footnote, the district court credited Curcio's safety concerns, referencing a travel advisory for Brazil issued by the U.S. Department of State, which was not offered as evidence by either party. Finally, the district court also found as "a unique and compelling fact" that Curcio's departure with L.R.L. was facilitated by the U.S. consulate. The consulate ultimately issued an emergency passport for L.R.L. after Lee would not return L.R.L.'s passport to Curcio.

The district court acknowledged that some factors indicated that L.R.L. was establishing roots in Brazil, such as his enrollment in school and an extracurricular activity, but the "weight of the

evidence" suggested that he was not so acclimatized that his residence in Brazil had become habitual.

The district court denied Lee's subsequent motion for reconsideration. Lee now appeals.

## II. STANDARD OF REVIEW

The Hague Convention on the Civil Aspects of International Child Abduction (the "Convention") and its implementing legislation, ICARA, govern international child abductions during domestic disputes. The Convention establishes procedures for the return of abducted children to the place where the child habitually resided before the abduction. *See* Hague Convention, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89.

In a proceeding under ICARA, we review a district court's factual findings for clear error and its legal conclusions de novo. *Pfeiffer v. Bachotet*, 913 F.3d 1018, 1022 (11th Cir. 2019). A factual finding is clearly erroneous when a review of the entire record leaves us "with the definite and firm conviction that a mistake has been committed." *Seaman v. Peterson*, 766 F.3d 1252, 1261 (11th Cir. 2014) (citation modified).

## III. DISCUSSION

As the petitioning parent, Lee must prove by a preponderance of the evidence that Brazil was L.R.L.'s habitual residence and that L.R.L. was wrongfully removed from that residence. *See* 22 U.S.C. § 9003(e)(1)(A). This appeal turns solely on whether Lee met that burden. And since L.R.L. was in Brazil for only

approximately sixty days, we note at the outset that the burden is particularly difficult for Lee to meet.

The Supreme Court has instructed courts to review the totality of the circumstances specific to the case when determining a child's habitual residence. *Monasky v. Taglieri*, 140 S. Ct. 719, 723 (2020). Certain facts, such as "the intentions and circumstances of caregiving parents," are "relevant considerations," though "[n]o single fact . . . is dispositive across all cases." *Id.* at 727. In this Circuit, courts employ "objective facts" and focus on the existence or non-existence of a settled intention to abandon the former residence in favor of a new residence, coupled with an actual change in geography and the passage of a sufficient length of time for the child to have become acclimatized. *Calixto v. Lesmes*, 909 F.3d 1079, 1084–85 (11th Cir. 2018) (citation modified). And because we are dealing with facts, we must bear in mind the deferential standard of review when assessing the district court's factual determinations.

To start, the district court correctly considered the totality of the circumstances in determining L.R.L.'s habitual residence, as demonstrated by its extensive consideration of the factual record. The district court acknowledged the evidence that Lee and Curcio had a settled intention to establish residency in Brazil. *See Pfeiffer*, 913 F.3d at 1024 (noting that "the parents must share a 'settled intention' to leave the old habitual residence behind" (citation modified)). That evidence included visiting Brazil to tour potential

schools and apartments, signing apartment leases, and moving personal belongings to Brazil.

After weighing the evidence, however, the district court was unpersuaded that Lee's and Curcio's intentions were as settled as Lee argued. Curcio held considerable reservations about living in Brazil prior to relocating, and her conditions for relocating included securing access to necessary medication, employment prospects, and a safe environment for L.R.L. Additionally, they entered Brazil on a 90-day tourist visa, which cast further doubt on a shared intention to leave the prior habitual residence. Lee argues that the district court improperly weighed the relocation evidence. We disagree. The district court properly considered their shared parental intent to relocate but correctly acknowledged that "it cannot alone transform the habitual residence." *Calixto*, 909 F.3d at 1084 (citation modified).

We also find that the district court properly credited the social connections that L.R.L. developed in Brazil. The district court acknowledged the evidence that L.R.L. was establishing roots in Brazil, such as his enrollment in school and extracurricular skateboarding. But the "weight of the evidence" suggested that he was not so acclimatized that his residence in Brazil had become habitual. The district court noted that the parties are all U.S. citizens and were in Brazil for only approximately sixty days. Moreover, the majority of L.R.L.'s family is in the United States, where L.R.L. has spent most of his life.

Lee argues that the district court committed legal error by placing undue weight on the actions of the U.S. consulate in São Paulo in facilitating L.R.L.'s exit. He asserts that the district court erred in "deferr[ing] to" the decision on L.R.L.'s habitual residence to the U.S. consulate, since the consulate is not the United States's central authority under the Convention and is thus not charged with upholding the United States's treaty obligations. According to Lee, the district court "eschewed its independent duty to interpret and apply the Convention." But even if we were to assume, for the sake of argument, that the district court improperly relied upon the consulate's actions, the error would be harmless in light of the remaining evidence the court cited in its consideration of the totality of the circumstances. *See Equal Emp. Opportunity Comm'n v. STME, LLC*, 938 F.3d 1305, 1322 (11th Cir. 2019) (explaining that we will not reverse on the basis of harmless error); *see also* Fed. R. Civ. P. 61.

Lee contends that the district court should not have considered evidence outside the record when determining habitual residence. The district court consulted two sources that neither party cited in the briefing or testimony: (i) a Brazilian government website that stated that tourist visas "are aimed at those travelling to Brazil . . . without the intention to establish residence, for the purposes of tourism and transit"; and (ii) a U.S. government website that provided travel advisory information for Brazil. But again, these sources were not independently dispositive in the district court's analysis. The website on tourist visas was one of several factors the district court considered in examining the parties' shared intention to relocate. Likewise, the U.S. government website was

25-11835                Opinion of the Court                        9

one of several facts the district court considered in crediting Cur-cio's safety concerns. Even assuming the district court erred in con-sidering these sources, the errors were harmless because their con-sideration had no substantial influence on the outcome of this case given the remaining evidence the district court considered. *See Equal Emp. Opportunity Comm'n*, 938 F.3d at 1322.

## IV. CONCLUSION

We do not doubt that each parent in this case wants the best for L.R.L. and strongly believes that he or she is the best custodial parent. But our review is limited. The clear-error standard requires us to affirm the district court's ruling unless we are "left with the definite and firm conviction that a mistake has been committed." *Seaman*, 766 F.3d at 1261 (citation modified). We are left with no such conviction. For the reasons stated above, we **AFFIRM** the de-nial of Lee's ICARA petition and motion for reconsideration.[1]

---

[1] Lee's motion to supplement the record is GRANTED IN PART as to Exhibit 2 and DENIED IN PART as to all remaining exhibits. *See* Fed. R. App. P. 10(e)(2)(C). Lee has also filed with our Court a letter of supplemental authority under Federal Rule of Appellate Procedure 28(j). This letter is more appropri-ately construed as an additional motion to supplement because the "supple-mental authority" Lee seeks to submit is documentation of the Brazilian au-thorities' approval of his family-reunification visa application in August 2025. Because this evidence was not presented in the district court, we decline to take judicial notice or otherwise consider it at this stage. *See* Fed. R. App. P. 10(a); *see also Clements v. Florida*, 59 F.4th 1204, 1209 (11th Cir. 2023) ("As an appellate court, we do not sit as a collective trier of fact."). And, even acknowl-edging that Lee has taken a significant step in the process of permanently re-locating to Brazil, this fact does not change our assessment regarding Curcio's intentions to move. Further, because Lee did not clearly brief any challenge to

10                           Opinion of the Court                    25-11835

---

the denial of his reconsideration motion, he has abandoned any such argument. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).